opinion. Disney, Judge: The primary issue before us is whether or not $350,000 of the $410,000 paid to the petitioner by RCA is taxable income. The notice of deficiency recognizes that the remaining $60,000 was properly allocated to the payment for patent and license rights. The petitioner contends that the amount in controversy was not income, but was compensation for damages caused by the tortious acts of RCA — specifically, the inclusion in its contracts with licensees of clause 9 and the enforcement of such clause. It asserts that the money so recovered was merely reimbursement for the injury sustained by its business and its capital assets and serves partially to restore its assets to their former value. The question before us, in last analysis, is: For what did the petitioner receive the $410,000? It must, in order to show nontaxability of the amount as income demonstrate that it was received as replacement of capital lost. After reviewing the voluminous record, we think that clearly the best guide to the answer is found in the instruments of settlement. The essential details thereof have been set forth in the findings. The plan of settlement informs us definitely that the $410,000 was paid “for the releases and patent rights referred to in items 2, 5 and 6.” Reviewing those items, we find that it was specifically paid in consideration of the fact that “the several Eaytheon Compames will grant to RCA, GE, Westinghouse and AT&T, full and complete releases from all claims of whatsoever nature on account of past acts of the parties except * * * [matters not here pertinent]”; also in consideration of the fact that “The side agreement entered into concurrently therewith shall be cancelled or suitably modified” ; also the grant by “Raytheon” to RCA of nonexclusive licenses in all countries under its present patents, applications, and inventions for vacuum tubes for use in the fields of radio purposes and for tubes for use in all fields of the same type; also, the grant by “Raytheon” to RCA of nonexclusive right to grant sublicenses to others, with reference to the same patents, applications, and inventions for vacuum tubes, and release of past damages for infringement. The instruments executed in accordance with the above described plan show that the word “Raytheon” refers to the original Massachusetts corporation, to Raytheon Manufacturing Co. of Delaware, and to Raytheon Production Co!, the petitioner, and to those companies RCA executed its check and its release, while the petitioner on its part executed a release to RCA, General Electric, Westinghouse Electric & Mfg., and American Telephone & Telegraph; and releases identical therewith were executed by the Massachusetts corporation and by Raytheon Manufacturing Co. of Delaware. Each of these releases forever releases and discharges RCA and the other corporations just above named in the most general terms from all actions, causes of action, suits, and debts in law or in equity, including “but without in any way limiting the generality of the foregoing,” all clauses of action arising under the antitrust laws of the United States or any state and in the action then pending. (Certain exceptions stated, specifically listed, are not material here.) RCA declined to allocate the amount paid, apparently either as to payees or as to matters for which paid. We think it obvious from a review of the facts just above stated that it is impossible to designate the recovery as capital replacement. All things between plaintiff and defendant, since Genesis, were settled, as well as matters with other parties. 15 Corpus Juris Secundum 776, on Compromise and Settlement, recites the general rule: A general settlement will be presumed, to include all existing demands between the parties, imposing on the party claiming that certain items were not included, the burden of proving that fact. Petitioner not only released and settled any claim for capital damage, but all other claims it had against RCA in addition to which for the consideration received it executed releases to other companies. It likewise executed a release and cancellation of its contractual right to recover under the side agreement — not only for damage done in the past, but for any for which it might have recovered in the future. This is not damage already done to capital structure. Furthermore, it is plain that the other members of the “Raytheon Group” released various matters and rights for the same consideration. The consideration can not fairly or logically all be ascribed to a certain claim of the petitioner alone. Tn addition to all of this, the petitioner here, for the same consideration, granted RCA nonexclusive licenses in all countries for vacuum tubes and the right to grant sublicenses, and released RCA and its subsidiaries from all claims for past infringement of certain patent rights. Under such a record the item of alleged damage or injury to capital, good will, and reputation of business must be seen as merely one of a series of matters, involving both past and future, settled or conveyed for the same consideration, and we are unable to allocate any portion of the settlement to nontaxable capital recovery in the face of the presumption that the Commissioner’s determination to the opposite effect is correct. In Armstrong Knitting Mills, 19 B. T. A. 318, we had before us this precise question, involving a settlement of two suits for $50,000 each, one, in effect, for damage to business and the other for breach of contract. We said: The amount in question was paid to the petitioner in compromise and settlement of two suits, and there is no evidence to indicate in what proportion the amount could be allocated between the actions. Also, there is no evidence to establish the specific purpose for which the money was paid, other than that it was paid as a lump sum in compromise and settlement of the litigation. Whether the amount represented damages for wrongful injury to the petitioner’s good will, or whether it represented damages for loss of profits, or indeed whether the amount was simply paid by the defendants to avoid further expense and harassment resulting from long continued litigation, does not definitely appear. Although, in that case we concluded that the suits involved did not involve damage to capital, nevertheless the criterion suggested is sound, and, in the absence of any means of ascertainment or allocation of any amount of capital injury, it is our opinion that, even if we assume the suit against RCA to have charged damage to the capital of plaintiff, the petitioner has failed to show error in the determination by the Commissioner. Helvering v. Safe Deposit & Trust Co., 316 U. S. 56, does not require the impossible. We are, for other reasons, of the opinion that the petitioner has not demonstrated receipt of capital replacement. The petitioner was organized in 1929. The suit for damages against RCA was particularly limited to damage done to May 28,1928, the day before conveyance of the assets of Conduction (including any right of action) to Manufacturing' Co. The suit charged, and the facts indicate, that the tube business enjoyed by Raytheon in 1926 and 1927 was virtually dead long before organization of the petitioner and the issuance of its stock and bonds for the assets of Manufacturing Co., including any right of action against RCA. It was not until the latter part of 1929 that any evidence of right of action was discovered, and not until 1931 that the right to recover was actually proven and action instituted. The petitioner, in effect, purchased no business consisting of the claim against RCA, but merely a possible chose in action. We think it may not soundly be said that such chose in action is of the same nature in petitioner’s hands as it had in those of Raytheon. Commissioner v. Sansome, 60 Fed. (2d) 931; certiorari denied, 287 U. S. 667, in our opinion, does not call for that conclusion. The question here is the nature of income to the petitioner, whether capital or no. Even if we assume Raytheon to have had a claim for capital damage, petitioner merely had an investment in a chose in action, to set against a recovery thereon. The parties have both taken the view that the various steps by which the petitioner acquired the claim — from Raytheon to Conduction to Manufacturing Co. to petitioner — were all reorganizations. If we so assume, and therefore assume the petitioner to have a basis the same as that of Raytheon, we have no evidence as to amount of that basis. Even Raytheon, had it received and retained the compromise money, would have had to show what capital it had invested in what it received. Demonstration of capital recovery necessarily entails determination of the amount of capital involved. In Edward H. Clark, 40 B. T. A. 333, and John H. Schofield, 19 B. T. A. 234, where we sustained a contention of capital recovery in amounts received in settlements, it is apparent that the amount of capital invested was an element considered in the conclusion. Recoveries for property taken in condemnation proceedings offer clear analogy to the instant situation; and, though by way of replacement of capital lost, they are free from tax only above the basis of cost. So here, if we assume that capital recovery is involved and contained in the compromise moneys, only that portion above basis may be left untaxed. The cost or other basis of Raytheon’s good will and business is not shown. The record is merely that that corporation was doing a profitable business, $450,000 in 1926 and $150,000 in 1927, which diminished to $10,000 in 1928. If it were assumed that the steps by which petitioner acquired the cause of action against RCA were not reorganizations, no facts appear upon which to value the basis of the right when acquired by petitioner upon its organization in 1929. In the absence of evidence of the basis of the business and good will of Raytheon, the amount of any nontaxable capital recovery can not be ascertained, and the determination of the respondent must be sustained. In the light of the above conclusion and of the fact that the respondent alleges his error in allowing $60,000 for expenses for attorneys’ fees only in the alternative in case the recovery was held to be for capital replacement, it is unnecessary to consider that allegation of error. This leaves for consideration respondent’s contention that he erred in allowing deduction of $26,949.13 as unamortized cost of patents transferred to RCA. He relies, upon brief, solely upon the testimony that no patents were transferred to RCA. The petitioner concedes that legal title did not pass, but argues that practically all rights under the patents were transferred, so that the control by RCA was for practical purposes equivalent to ownership. This argument overlooks the fact that what the petitioner granted to RCA was nonexclusive licenses and the nonexclusive right to grant sublicenses to others. Such nonexclusive rights are by no means a practical equivalent of ownership. The petitioner not having transferred the patents in the taxable year, did not therein change its previous position with reference to annual amortization of cost of such patents. The Commissioner erred in allowing the deduction of $26,949.13. Reviewed by the Court. Decision will be entered wider Bule 50.